Board of Education v. Taft.

## BOARD OF EDUCATION, DISTRICT NO. 3, etc.,

### v.

### EDWARD TAFT.

1. SCHOOL BONDS—AUTHORITY TO ISSUE.—School directors have no authority to issue bonds of their district, except by virtue of the provisions of the statute, and where the statute requires a vote of the people authorizing their issue, bonds issued without such vote are void, even in the hands of an innocent holder for value.

2. RECITALS OF VOTE.—The recitals of officers invested with the ministerial duty of issuing the bonds of a school district, as to the legality of the election authorizing their issue, and the existence of the facts necessary to their validity, are presumptive evidence of the facts so recited and the burden is thereby thrown upon the district to overcome such presumption.

3. PRACTICE — OBJECTION TO SECONDARY EVIDENCE MUST BE SPECIFIC.—Where objection is made to evidence on the ground that it is secondary, the ground of objection should be specified, so that the opposite party may have an opportunity to remove it. A mere general objection to the admission of such testimony is not sufficient.

4. SECONDARY EVIDENCE.—There is no provision of the statute making the record of a vote of the people of a school district upon the question of borrowing money, the only primary evidence on that question or its result. And where defendants sought to prove by oral testimony the fact that no vote was ever had, such evidence is not secondary.

5. PRACTICE—FORM OF JUDGMENT IN DEBT.—In an action of debt upon a municipal bond, where there is a finding for the plaintiff, the proper practice would be to find the amount of the unpaid principal as the plaintiff's debt, and assess his damages at the amount of the unpaid interest, and to render judgment with execution for both.

APPEAL from the County Court of Cook county; the Hon.

Mason B. Loomis, Judge, presiding.    Opinion filed December 13, 1880.

Mr. H. C. IRISH, for appellant; that the power of a school district to borrow money and issue bonds is not one of the general powers possessed by a school district, cited Rev. Stat. 1874, 962; School Directors v. Miller, 54 Ill. 338; Bissell v. Kankakee, 64 Ill. 249; School Directors v. Taylor, 54 Ill. 289; School Directors v. Fogleman, 76 Ill. 189; School Directors v. Sippy, 54 Ill. 287; The People v. Thatcher, 12 Chicago Legal News, 94; Hewitt v. Board of Education, 94 Ill. 528; 1 Gross' Stat. 697, § 47.

Bonds issued without a vote. as required by the statute, are void, even in the hands of a *bona fide* holder for a value. So, also, if issued for a purpose other than that provided by the statute: Bissell v. Kankakee, 64 Ill. 249; School Directors v. Miller, 54 Ill. 338; Lippincott v. Town of Pana, 92 Ill. 24; Hewitt v. Board of Education, 94 Ill. 528.

Being issued without authority, no subsequent act of the district, such as payment of interest, could make them valid: Lippincott v. Town of Pana, 92 Ill. 31; Shaeffer v. Bonham, 95 Ill. 368; Gaddis v. County of Richland, 92 Ill. 126.

The district is not estopped to deny the recitals in the bond: Force v. Town of Batavia, 61 Ill. 99; Williams v. Town of Roberts, 88 Ill. 13; Lippincott v. Town of Pana, 92 Ill. 34.

The bond being issued after the Constitution of 1870 came into force, is affected by its provisions wherever they conflict with the prior law authorizing the issue of bonds: Constitution 1870, Art. IV, § 12; People v. Jackson, 92 Ill. 455.

Plaintiff must prove affirmatively that the bond was issued under a vote had prior to the Constitution: Wright v. Bishop, 88 Ill. 304.

Municipalities cannot create indebtedness without first providing for its payment by the levy of a tax: Law v. The People, 87 Ill. 385.

School directors are merely the agents of the district: School Directors v. Fogleman, 76 Ill. 189; Glidden v. Hopkins, 47 Ill. 525.

Board of Education v. Taft.

The fact that the district may have received the benefit of the bond, makes no difference: School Directors v. Parks, 85 Ill. 338.

Mr. M. D. FLAHERTY and Mr. F. J. SMITH, for appellee; cited Bolton v. Board of Education, 1 Bradwell, 193; Town of Coloma v. Eaves, 2 Otto, 484; Marcy v. Township of Oswego, 2 Otto, 637; Humboldt Township v. Long, 2 Otto, 642.

BAILEY, J.   This was an action of debt, brought by Edward Taft against the Board of Education of District No. 3, township 37, north, range 11, east, in Cook county, successors to the school directors of said district, upon a bond for $500, purporting to have been executed by said school directors, dated February 1, 1872, payable February 1, 1877, to the order of one Isaac A. Fisk, with ten per cent. interest, said bond having been assigned by said Fisk to the plaintiff by indorsement. With the exception of the date of its execution and maturity, the name of the obligee, and a change of one member of the board of directors, this bond is identical with that set out in the opinion of this court in the case of Bolton v. The Board of Education, etc., 1 Bradwell, 193.

To the declaration, the defendant filed a plea of *non est factum*, verified by affidavit and several special pleas, denying in various forms, the authority of the board of directors to issue said bond, and averring that there was never any meeting of the people of the district to determine the question of borrowing money or issuing bonds, or any vote of the people authorizing the directors to borrow money or to issue the bonds of the district therefor.

At the trial, which was had before the court without a jury, the plaintiff, after establishing the genuineness of the signatures of the directors upon said bond, and the official character of said directors, but without attempting to adduce any further proof of their authority to issue said bond, offered the bond in evidence, and the court, against the objection and exception of the defendant, permitted the same to be read.   The plaintiff thereupon, after proving a computation of the amount due, rested his case.

The defendant then introduced the testimony of several witnesses, who were residents, and some of them office-holders, in said district, tending to show, affirmatively, that no meeting or vote was ever had in said district authorizing the directors to borrow money or issue bonds for the purpose of building a school house, or for any other purpose. At the close of the defendant's evidence, the court, on motion of the plaintiff and against the exception of the defendant, excluded all the defendant's evidence, and without further evidence, gave judgment for the plaintiff for the amount of the bond and interest. To reverse said judgment, the defendant brings the case to this court by appeal.

The bond in question purported on its face to be issued pursuant to the provisions of the act of February 16, 1865, amending the school law, and as that act was the only one then in force authorizing school directors to borrow money and issue bonds, the authority of the directors to issue this bond, if any existed, must have been derived from that act. Section 17 of said act, amending section 47 of the school law of 1861, is as follows:

" For the purpose of building school houses, or purchasing school sites, or for repairing and improving the same, the directors, by a vote of the people, may borrow money, issuing bonds, executed by the officers, or at least two members of the board, in sums of not less than one hundred dollars; but the rate of interest shall not exceed ten per cent.; nor shall the sum borrowed in any one year exceed five per cent. of the taxable property of the district; nor shall the tax levied in any one year, for building school houses, exceed three per cent." Pub. Laws 1865, page 119.

It would seem to be too plain for controversy, that under this statute, the school directors in the absence of a vote of the people authorizing it, had no authority whatever to borrow money or issue bonds. The power to do this was granted only where the popular vote authorized it. If the bond was issued without such vote, it was a case, not of the defective execution of a power, but of an entire absence of power.

It is urged, however, that, as the bond recites a vote of the

people authorizing its issue, such recital is, as between the school directors and an innocent assignee of the bond, conclusive evidence of the fact so recited; and the court below, in excluding the defendant's evidence, seems to have taken that view, relying, apparently, upon the authority of Bolton v. The Board of Education.

When that case was decided by this court, the Supreme Court of this State had not, in any decision then known to us, determined what effect should be given to recitals in municipal bonds, as evidence of the facts recited, where the bonds had passed into the hands of *bona fide* purchasers. The Supreme Court of the United States, however, had in a recent case, held that where authority was given by statute to a municipality or its officers to issue municipal bonds in payment of a subscription for shares of stock in a railroad company, but only upon some condition precedent—such as a popular vote favoring the subscription—and where the officers of the municipality were invested with power to decide whether that condition had been complied with, their recital that it had been, made in the bonds issued by them and held by a *bona fide* purchaser, were conclusive of the fact, and binding upon the municipality. Town of Coloma v. Eaves, 92 U. S. 484. A similar doctrine had also been held by the Supreme Court, in County of Warren v. Marcy, 97 U. S. 96. The principles decided in those cases seemed to us to apply with equal force to cases of bonds issued by school directors, and in the absence of any decision by our own Supreme Court, we felt constrained to follow the authority of the Supreme Court of the United States, and hold that the recitals in the bonds in suit in Bolton v. The Board of Education, were conclusive evidence of the fact that a vote of the people of the district authorizing their issue had been held.

Since that case was decided, the decision in the case of Williams v. Town of Roberts, 88 Ill. 11, was announced, in which our Supreme Court dissent from the rule adopted by the Supreme Court of the United States, and hold that the recitals of the officers who are invested with the ministerial duty of issuing municipal bonds as to the legality of the election authorizing their issue, and the existence of the facts necessary

to their validity, will not render such bonds, when issued without authority of law, valid, in the hands of even a *bona fide* holder, so as to estop the municipality from calling in question the authority of the officers to issue them. That was a suit brought by an indorsee upon a town bond issued to a railroad company in payment of a stock subscription. The bond purported to be issued by the supervisor and town clerk, and it was expressly recited therein that it was issued in payment of a subscription to the capital stock of the railroad company, " made by the town, by virtue of a vote of a majority of the voters in said town in favor thereof, at a special election held for such purpose in said town, on the 25th day of March, 1869, in pursuance of the laws of the State of Illinois, and the several acts of the General Assembly incorporating said railroad company." The town was permitted to show, notwithstanding such recital, that the application for the election was signed by only twe lvelegal voters and tax-payers instead of twenty, as required by the statute, and that the notice of the election was not posted for the required length of time, and consequently that the bond was issued without authority of law, and was void. In the opinion, the court lay considerable stress upon the fact that under our township organization system there is no officer or board representing the corporate authority of the town, and that such corporate authority is represented alone by the electors, who must necessarily act through town meetings or elections. The supervisor and town clerk were held to be mere agents of the municipality, and the decision is placed upon the ground that " the agent cannot by his own act alone invest himself with power to bind his principal; and his individual act, unknown to and unsanctioned by his principal, can not be held to estop his principal to deny his power to act."

In the more recent case of Lippincott v. Town of Pana, 92 Ill. 24, which was a bill in chancery, to restrain the collection of a tax levied to pay the interest on town bonds issued to a railroad company, and to have said bonds declared void, the court go further, and hold that where there is an entire absence of power, as distinguished from a defective execution of the power, the recitals of those invested with the ministerial duty

of issuing municipal bonds, will afford no protection to even *bona fide* holders for value of such bonds.

In Hewitt v. The Board of Education of Normal School District, 94 Ill. 528, suit was brought by an indorsee, upon a bond issued by the Board of Education, and although no question seems to have been raised as to the effect of recitals in the bond, the court hold that " a person taking the bonds of a municipal corporation has access to the records of the body, and it is his duty to see that such instruments are issued in pursuance of authority, and when without power, they must be held void in whosesoever hands they are found."

In the case of the Town of Lemont et al. v. The Singer and Talcott Stone Co. et al., in which the opinion was filed November 20, 1880, the Supreme Court seem to take a somewhat different view of the law. That was a bill in chancery, brought to restrain the collection of certain taxes levied, among other things, for the payment of the indebtedness evidenced by the bond sued on in this case, and other bonds of like character; and it was held, that when bonds of a school district, negotiated in the market to raise money to build a school house, recite that they have been issued in pursuance of a vote of the district legally had, and they are in the hands of innocent holders, it must be presumed that they are legal, and that their issue was authorized by a legal vote, until the contrary is shown by clear and satisfactory evidence. Accordingly, in a suit to enjoin the collection of a tax to pay such bonds, in the hands of innocent purchasers, the burden of proof is on the district to overcome the presumption of the legality of the bonds.

There is undoubtedly a distinction to be drawn between the case of bonds issued by a town, and those issued by a board of school directors, since, in the former case, the town officers do not represent the corporate authority of the town, while the school directors are themselves constituted by law the corporation, and, as such, are the tribunal vested with the power to decide whether the conditions upon which the bonds may issue have been complied with.

It is clear that the authority last cited must control this case. It holds that the recitals in the bond are strong presumptive,

though not conclusive, evidence of the facts recited, and to
that extent the case of Bolton v. The Board of Education, must
be considered as overruled. We must hold, then, that the court
below decided correctly, in admitting the bond in evidence
without proof on the part of the plaintiff of a vote of the peo-
ple of the district authorizing it. But the exclusion of the
evidence offered by the defendant, tending to show that no
such vote was had, was erroneous. It is not important for us
to determine whether the evidence excluded would have been
sufficient to overcome the *prima facie* presumption raised by
the recitals in the bond. It is enough that it had 'a tendency
to overcome that presumption. It should therefore have been
considered and not excluded.

The point is made, that the oral testimony offered was incom-
petent, the fact sought to be proved being one of which the
records of the school district were the only primary evidence.
The clerk of the Board of Education, who was the official cus-
todian of the records of the district, produced all the records
in his possession, but these, on inspection, were found to con-
tain no entries earlier than sometime in 1874, which was sub-
sequent to the date of the bond. These, as he testifies, were
all the records that came to his hands from his predecessor in
office, or of which he had any knowledge, and there was no evi-
dence tending to explain the absence of records of an earlier
date, though, on the other hand, it did not appear affirmatively
that such earlier records ever existed.

If the testimony of the witnesses is to be regarded as mere
secondary evidence, it may perhaps be doubtful whether a suf-
ficient foundation was laid for its introduction if proper objec-
tion had been made. But such objection, to be available,
should have specified the ground of objection, so that the de-
fendant might have had an opportunity to remove it. The
record shows that a general objection to the oral testimony was
submitted, but no objection seems to have been made on this
ground, nor does such objection seem to have been considered
by the court in finally excluding the evidence.

But we do not think that it was in the nature of secondary
evidence. We find no provision of the statute making the

record of the vote of the people of a school district on the question of borrowing money, the only primary evidence of a vote on that question, or its result. While it is of the utmost importance that an accurate record should be preserved of proceedings of this character, we are not prepared to say that they are unsusceptible of proof in any other way. In Bartlett v. The Board of Education, 59 Ill. 364, oral proof of the action of the board approving a treasurer's bond was admitted, no record of such approval having been preserved. The court, in holding such evidence competent, say : "Corporations may, and usually do, keep a record of their proceedings, but it is not always necessary to their validity that they should do so."

But we cannot well see how the fact sought to be proved by oral testimony could appear of record. The defendant does not seek to show any proceedings which might be matter of record, but that no such proceedings were had. If the fact is as claimed, the record, if produced, would necessarily have been silent on the subject. We are of the opinion, therefore, that there was no ground for rejecting the defendant's evidence as incompetent.

For the error of the court below in excluding the defendant's evidence, the judgment must be reversed.

There is also a manifest error in the form of the finding and judgment. At the date of the trial, the amount appearing to be due on the bond was $500 principal, and $312.50 interest. The court below found the plaintiff's debt to be $500, and his damages $812.50, and entered judgment in favor of the plaintiff for such debt and damages, with an order that the debt should be discharged on payment of the damages, interest and costs. The proper practice would have been to find the amount of the unpaid principal of the bond as the plaintiff's debt, and to assess his damages at the amount of unpaid interest, and to render judgment, with execution, for the collection of both. The twenty-first section of the Practice Act, regulating the practice in suits on penal bonds, has no application to this case. This was not a penal bond conditioned for the performance of covenants, but merely an obligation to pay the 'sum of money mentioned in the bond, with the stipulated interest. Had it

been a penal bond, the penalty would have been the utmost limit of the plaintiff's recovery, and $812.50 damages could not have been recovered where the penalty was only $500.

The judgment will be reversed and the cause remanded.

Judgment reversed.