572

John H. Greenlee, Trading as John H. Greenlee Elevated Tank Service, Appellee, v. Jesse F. Beaver and William Chessman, Appellants.

Gen. No. 10,205.

Opinion filed June 4, 1948.

Released for publication June 25, 1948.

CARL O. BUE, of Elmhurst, for appellants.

JOHN W. LEEDLE, of Wheaton, for appellee; CLIFFORD A. PEDDERSON, of Rockford, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

In a proceeding to recover on certain notes signed by defendants Jesse F. Beaver and William Chessman, as the village president and clerk, respectively, of the Village of Itasca, the circuit court of Du Page

county entered a judgment on the verdict of the jury in favor of plaintiff, John H. Greenlee, and the defendants appeal therefrom.

The undisputed facts are that plaintiff entered into a contract with the Village of Itasca to repair its water tower. As the work progressed, the village made periodic payments in the amounts of $1,232.60, $1,592 and $1,500. When the final payment of $1,471.40 was due, however, the village did not have sufficient funds available to meet the obligation immediately, and paid only $333 thereon. Plaintiffs thereupon prepared the notes in controversy for the remainder of the unpaid balance, in order to secure advances from the bank, and through his representative, Mr. Spielman, presented the notes at the regular meeting of the village board of trustees.

By a motion duly passed at the meeting, the trustees authorized the village president and clerk to sign the notes for the village. Although January 15, 1943 and April 15, 1943, were originally designated as the maturity dates on the notes, inasmuch as funds would not be available in the village account until after January 20 and April 20, when the water bills fell due, the maturity dates were changed by plaintiff's representative, Mr. Spielman, to February 1 and May 1, respectively.

No money was paid on the notes, and plaintiff secured a judgment by confession against the defendants personally. On defendants' motion, however, the court opened that judgment, and a trial was had on the merits. The jury returned a verdict in favor of plaintiff, assessing his damages at $1,371.44. The court entered judgment on the verdict, but reduced the damages to $1,271.94, the sum designated in the judgment by confession, and denied defendants' motions for judgment notwithstanding the verdict and for a new trial.

The issue presented in this cause is primarily a question of law, whether the circuit court erred in entering judgment on the verdict of the jury which imposed liability on the defendants personally for the amount designated in the notes signed by them as president and clerk of the Village of Itasca.

Plaintiff contends that, by signing the instruments, defendants became personally liable thereon under the Negotiable Instruments Law on the ground that they were not the duly authorized agents of the village. Plaintiff insists, moreover, that it was the province of the jury to determine the capacity in which defendants signed the notes, and inasmuch as that body returned a verdict in favor of plaintiff, its judgment on that controverted issue of fact may not be set aside unless palpably against the weight of the evidence.

Defendants maintain that the notes are not their personal obligations, but that of the Village of Itasca, as indicated on the face of the instruments, and from the extrinsic evidence of the intention of the parties at the time the instruments were executed. They contend that either these notes are the binding obligation of the village, or, if it was without power to execute the instruments, they are a nullity.

Sec. 20 of the Negotiable Instruments Law (ch. 98, Ill. Rev. Stat., par. 40 [Jones Ill. Stats. Ann. 89.040]) provides that where the instrument contains, or a person adds to his signature words indicating that he signs for, or on behalf, of the principal, or in a representative capacity, he is not liable on the instrument, if he was duly authorized; but the mere addition of words describing him as agent, or as filling a representative character, without disclosing his principal, does not exempt him from personal liability.

From the face of the instruments upon which plaintiff predicates his claim, and which constitute the sole evidence submitted by him, it appears that defendants

signed the notes in their representative capacity as president and clerk of the Village of Itasca, rather than as private individuals. (*Scanlon v. Keith,* 102 Ill. 634; *Ruwisch v. Theis,* 325 Ill. App. 307.)

This prima facie interpretation is corroborated by the uncontroverted evidence submitted by defendants. The fact that plaintiff's representative brought the notes to the meeting of the village board of trustees to be approved and signed, rather than to the homes or the business offices of the defendants; that the maturity dates were changed by the plaintiff to conform to the dates on which there would be sufficient funds in the village account, thereby indicating that he looked to that fund for payment, rather than to the personal accounts of the defendants; that plaintiff's representative was present when the trustees passed a motion authorizing the president and clerk to act for the village, all tend to establish that both parties understood and intended that the instruments in controversy should be the obligations of the village, rather than the personal obligations of the defendants.

It is clearly established, moreover, that such extrinsic evidence is admissible to show the intention of the parties, and the capacity in which they signed the instruments, and this intention is controlling in determining their liability. (*Tampa Investment & Securities Co. v. Taylor,* 272 Ill. App. 541; *Decowski v. Grabarski,* 181 Ill. 279; *Thompson v. Hasselman,* 131 Ill. App. 257.)

Inasmuch as defendants have not only signed in their representative capacity, but have disclosed their principal—the Village of Itasca—on the face of the notes, and have introduced in evidence the motion passed by the village board of trustees authorizing them to sign the notes, it would appear that the facts come within the purview of sec. 20 of the Negotiable Instruments Law, and that the defendants are, therefore, not personally liable on the notes.

Plaintiff argues, however, that inasmuch as the Village of Itasca could not become indebted through these notes, and that since neither the president, nor the clerk, nor the board of trustees could create a binding debt for the village by the mere passage of the aforementioned motion, the defendants could not be deemed to be the duly authorized agents of the Village of Itasca, as contemplated by sec. 20, and must, therefore, be held liable on the notes in their personal capacity.

Although plaintiff has cited no authority for the proposition of law that the village could not become indebted on the notes, nevertheless, this court takes cognizance of the established precedent that a municipal corporation has no power to issue commercial paper, except by special statute. (*Coquard v. Village of Oquawka,* 192 Ill. 355; *Hewitt v. Board of Education Normal School Dist.,* 94 Ill. 528, and cases cited therein; *Ziebell v. Town of Bremen,* 313 Ill. App. 266, 44 C. J. 1231.) A corollary to that rule of law, however, is that such paper is void, even in the hands of a bona fide purchaser, and that persons accepting such paper must take it at their own risk, since they are deemed to have access to the public records, and are under a duty to see that such instruments are issued pursuant to proper authority. (44 C. J. 1244; *Hewitt v. Board of Education Normal School Dist., supra.*)

In the instant case the notes in controversy were signed as the obligations of the Village of Itasca, and the evidence indicates that the parties regarded them as such, rather than as the personal debts of the defendants. Under the prevailing rules of law, therefore, in the absence of specific authority of the village to execute these instruments they are void and of no legal effect.

The strained construction which plaintiff urges upon this court to the effect that, since the village had

no power to execute the notes, the defendants could not be deemed to be the duly authorized agents thereof, and must, therefore, be held personally liable on the notes, is without legal substance, and contrary. to the terms and purport of sec. 20 of the Negotiable Instruments Law.

■ The purpose of sec. 20 is to protect persons signing an instrument in a representative capacity from liability thereon where they have disclosed their principal. (Brannan's Negotiable Instrument Law, p. 163.) The implication from the phrase "if he was duly authorized," that agents signing without authority would be held personally liable on the instrument, is a morsel of controverted judicial legislation, which, however, has no application to the instant case. The Village of Itasca did unequivocally, and by formal act, authorize the defendants to sign the notes in a representative capacity, therefore, the acts of defendants are in no way analogous to cases where agents attempt to bind their principals without authority to do so, and are consequently held personally liable on the instruments.

■ In the instant case it is the village, as principal, which is without power to execute the notes, rather than the agent acting without authority as contemplated by sec. 20 of the statute. Inasmuch as this lack of power is a matter of public law, plaintiff is charged with full knowledge of it, and must bear the risk of accepting the instrument. (*Mann v. Richardson*, 66 Ill. 481.)

It would indeed be a perversion of the legal processes if plaintiff, after requesting and securing the notes of the Village of Itasca, is permitted, upon discovery that the village unintentionally exceeded its power, to impose personal liability instead on the officers of the village.

In view of the foregoing, it is our view that the defendants are not personally liable on the notes in question, so judgment entered herein by trial court is reversed.

*Judgment reversed.*