David Rosenheim, and Mary M. Abbe, et al., Plaintiffs, First Securities Company of Chicago, New York Blower Company, Intervening Petitioners-Appellees, v. City of Chicago, et al., Defendants. Board of Education of City of Chicago, Defendant-Appellant.

Gen. No. 46,895.

First District, First Division.

November 19, 1956.

Released for publication February 11, 1957.

Frank R. Schneberger, of Chicago, for appellant; Frank S. Righeimer, James W. Coffey, and John T. Mehigan, all of Chicago, of counsel.

Fred L. Steers, of Chicago, for appellee.

Dale, Haffner & Grow, of Chicago, for First Securities Company of Chicago, intervening petitioner-appellee; John M. Wejman, of Chicago, of counsel.

JUDGE BURKE delivered the opinion of the court.

In 1931 the Board of Education of the City of Chicago had no money in its treasury to pay its teachers, employees and creditors. This situation was due to the general economic depression and to the fact that a general property reassessment for tax purposes was pending in Cook County as a result of which no taxes for the years 1928 through 1931 were being extended or collected. In an effort to provide a method of paying accrued salaries of teachers and employees and accrued accounts of other creditors, the Board on June 29, 1931 adopted a resolution which recited that it had no moneys to pay such past due obligations, and provided for the deposit of 1931 tax anticipation warrants with the Secretary of the Board, as Trustee, to be held as security for the payment of instruments designated "Participation Certificates" proposed to be issued to employees and creditors of the Board. Such certificates were to be in the form of general obligations of the Board and to bear 6 per cent interest until paid. As such purported obligations they were to be payable from any funds of the Board and were secured by 1931 tax anticipation warrants deposited for their payment. In accordance with the resolution the Board issued a large amount of such "Participation Certificates" or "Scrip" as they were commonly known.

On September 8, 1931, a complaint was filed in behalf of taxpayers and teachers for a decree declaring that the participation certificates theretofore issued were void, and for an injunction against further issuance and redemption. On October 16, 1931, following a hearing on an application for a temporary injunction, the chancellor stated that in his opinion the

383

Board did not have authority to issue participation certificates and directed the attorneys for the plaintiffs to prepare and present an order for a temporary writ of injunction. The record does not show whether a temporary injunction was issued. The Board accepted the views of the chancellor and ceased to issue participation certificates. In 1932 orders were entered decreeing that the 1931 tax warrants deposited as collateral security for the participation certificates were void and ordered them canceled, which orders were complied with by the Board. The 1932 orders further decreed that the Board be authorized and empowered to issue 1931 tax anticipation warrants in small denominations to redeem outstanding and unpaid participation certificates issued to creditors, and that the tax anticipation warrants so authorized to be issued be exchanged for the principal amount of the participation certificates, the question of interest claimed to be due holders of such certificates to await the further order of the court. The principal amounts of the participation certificates represented the original principal indebtedness from the Board to its teachers and creditors.

The holders of the participation certificates exchanged them for an equal amount of 1931 tax warrants bearing interest at 6 per cent from the date of the issuance of the tax warrants. These tax warrants and all other Board of Education tax anticipation warrants received in exchange for the participation certificates were paid in full with interest from the proceeds of the 1931 tax collections. On May 3, 1937, the New York Blower Company filed its intervening petition. On July 24, 1942, the predecessor of the First Securities Company of Chicago filed its intervening petition. On March 1, 1954, the intervenors filed amendments to their petitions, praying for money judgments against the Board, based on claims for

interest on their participation certificates from the date of their issuance to the date they were exchanged for 1931 tax warrants. The intervenors have been paid the entire amount of the original principal indebtedness due them from the Board, plus interest as accrued on the 1931 tax warrants they received in exchange for their participation certificates. The Board filed answers denying that intervenors were entitled to interest on their participation certificates and stated that the Board lacked authority to issue participation certificates or to create an obligation thereunder to pay interest; that the instruments were illegal and void and that no interest could be recovered thereon; that intervenors' long inaction constituted an abandonment of their claims; that intervenors were guilty of laches; and that the orders and rulings in the case are res judicata of the question of interest thereon. Following a hearing the chancellor on November 22, 1955, entered a decretal judgment in favor of the First Securities Company of Chicago against the Board for $4,538.57 and in favor of the New York Blower Company for $4,213.90, payable out of the 1931 tax collections as claimed interest at 6 per cent per annum on the participation certificates from the dates of their issuance in 1931 to the various dates they were exchanged for 1931 tax anticipation warrants. The Board appeals.

██ ██ The Board of Education is a body politic and corporate, created to carry out certain governmental functions in connection with the education of children of the school district of Chicago, and has only such powers as are expressly conferred upon it by the Legislature or such as may be necessary to carry into effect granted powers. Neither in 1931, nor at any time since, did the Board have statutory authority which would authorize it to issue interest bearing "Participation Certificates." Such an instru-

ment is not mentioned in the statutes. The attempt to do so in 1931 was without authority of law and the certificates issued were void and no interest can be recovered thereon. In Hewitt v. Board of Education of Normal School Dist., 94 Ill. 528, the court said (at page 532):

"Where a corporation is created for business purposes, all persons may presume such bodies, when issuing their paper, are acting within the scope of their power. Not so with municipalities. Being created for governmental purposes, the borrowing of money, the purchase of property on time, and the giving of commercial paper, are not inherent, or even powers usually conferred; and unless endowed with such power in their charters, they have no authority to make and place on the market such paper, and persons dealing in it must see that the power exists. This has long been the rule of this court."

See also People v. Johnson, 100 Ill. 537; Law v. People ex rel. Huck, 87 Ill. 385; Newell v. School Directors of Dist. No. 1, T. 30 N., R. 3 E., 68 Ill. 514; Loeb v. Board of Education of Chicago, 203 F.2d 775; Greenlee v. Beaver, 334 Ill. App. 572.

The intervenors call attention to the 1931 statute governing the Board providing that the specifications of the powers granted are not to be construed as exclusive, but the Board shall exercise all powers that may be requisite or proper for the maintenance and the full development of an efficient public school system, not inconsistent with those general provisions of the school law of the state which apply to all districts. They say that the statute does not limit the powers of the Board, but, on the contrary, it is expansive in the grant of power, curbed only by inconsistent general provisions of the school law, and that there is no provision which prohibits the Board from contracting to pay interest. The intervenors insist that the Legis-

386

lature meant that the Board should have broad powers and that there is nothing improper about the payment of interest. They point out that the Board in its business affairs is in competition with private business and must have powers which permit it to operate when funds are needed. They concede that there is no statute expressly stating that the Board is empowered to pay interest but that there are references in the statutes which recognize that the Board has such power.

A careful consideration of the pertinent statutes convinces us that the Board in 1931 had no power or authority to issue general obligation interest-bearing commercial paper such as participation certificates as a mode of making provision for the payment of its obligations when there was not sufficient money in its treasury to meet its ordinary and necessary expenses. The only authority given the Board in such a situation was to issue tax anticipation warrants. When the Legislature provided this limited power, it by implication prohibited the doing of anything inconsistent therewith. The Legislature limited the power to the issuance of tax anticipation warrants, payable solely from the taxes against which they were drawn, thus protecting the taxpayer by limiting the liability the Board might incur to the outstanding taxes. The obvious intent of the Legislature was to make it impossible to foist unlimited liability on the taxpayer. We do not think that the 1931 statute which refers to interest on temporary loans supports the position of the intervenors. The temporary loans mentioned are inter-fund loans such as loans authorized by the Board from its educational fund to its building fund. Participation certificates are neither bonds nor tax anticipation warrants nor temporary loans. There was no "temporary loan" in the case at bar, in fact, there was no loan between the Board and the intervenors. The participation certificates cannot be viewed as a tempo-

rary loan. There was no borrowing but simply an attempt to make payment of an existing debt by paper which the Board was without power to issue.

The intervenors contend that a municipal corporation is liable for interest on its obligations when it expressly agrees to pay interest. There was no agreement made to pay interest at the time the teachers were employed, materials purchased and the debt incurred. It was not until some time after the debt accrued that the Board attempted to pay interest on the indebtedness through the issuance of interest-bearing participation certificates, despite the fact that there was no authority under the law to issue such commercial paper. We have held that the participation certificates were void. The provision for interest is also void and no recovery can be had upon it. To enforce the claim of the interest would be to circumvent the illegality of the participation certificates. The intervenors cite cases holding that a municipal corporation can by express contract bind itself to pay interest. These cases also hold that the liability for interest must be provided for by contract lawfully made. In the case at bar the Board, in contracting the original indebtedness for salaries of teachers and for materials and services to be rendered by contractors, did not agree to pay interest. It was only in the participation certificates subsequently issued that the Board for the first time agreed to pay interest. The Board has been authorized to pay interest on tax anticipation warrants and bonds issued by it, but no authority exists for the issuance of participation certificates or to contract to pay interest thereon. The intervenors urge that the court has decided that the participation certificates issued by the Board in 1931 were not void, referring to the orders entered in 1932 declaring the warrants void, ordering them canceled and giving the holders of the participation certificates the right to exchange

them at full face value for the new 1931 interest-bearing tax anticipation warrants. To obtain the new warrants a holder was required to surrender his certificate. The new warrants and the old certificates contained the same rate of interest. The intervenors insist that the import of the 1932 orders was to establish the participation certificates as valid obligations of the Board as to their special amount.

The intervenors state that the 1932 orders adjudicated the validity of the participation certificates, that the orders then entered are res judicata and that the Board may not relitigate the issues thus settled. In our opinion this contention is without merit. If the court in 1932 had adjudicated the participation certificates to be valid, it would have dismissed the amended complaint for want of equity. If the chancellor construed the participation certificates to be valid there would have been no purpose in ordering that the Board issue tax anticipation warrants in small denominations to be exchanged for the principal amount only of the participation certificates. We find that by the agreed orders entered in 1932 the chancellor did not change his opinion that the Board lacked power and authority to issue participation certificates. Since under the statute the Board had express authority to issue tax anticipation warrants as a means of discharging the original debt for services previously rendered and materials furnished, the court provided in its order that the tax anticipation warrants should be issued in the principal amounts only of the participation certificates. These amounts evidenced the original principal indebtedness due from the Board to its teachers and creditors. For the convenience of all parties the chancellor permitted the use of the participation certificates as evidence of the amount of the original debt in determining the amount of tax anticipation warrants to be received and the exchange was

389

manifestly for that purpose. We conclude that there is no merit to the intervenors' contention that the validity of the participation certificates was determined in the orders entered in 1932. The only time the chancellor determined that the participation certificates were valid was when he entered the decree from which the instant appeal is prosecuted.

It is unnecessary to consider the contention of the Board that the intervenors are guilty of laches. For the reasons stated the decretal judgment of the Circuit Court of Cook County is reversed and the cause is remanded with directions to enter a decree dismissing the petitions of the intervenors for want of equity.

Decretal judgment reversed and cause remanded with directions.

NIEMEYER, P. J. and FRIEND, J., concur.